**David McGRATH, Plaintiff,**

v.

**Mahanoy Counselor John L. JOHNSON, Mahanoy Superintendent Martin L. Dragovich, Mahanoy Deputy Superintendent Edward Klem, Mahanoy Unit Manager James Unell, Mahanoy Security Officer John Doe, DOC Secretary Martin Horn, DOC Deputy Commissioner William J. Love, DOC Coordinator of Classification Don Williamson, Pittsburgh Superintendent James S. Price, and Pittsburgh Counselor Dan DeFlora, Defendants.**

**No. CIV. A. 98–6595.**

United States District Court, E.D. Pennsylvania.

Sept. 24, 1999.

David McGrath, Albion, PA, pro se.

Kristen Kirk, Office of Attorney General, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior
District Judge.

Plaintiff, presently an inmate at the State Corrections Institution at Albion, filed this pro se civil rights complaint against nine Department of Corrections ("DOC") officials: Mahanoy Superintendent Martin L. Dragovich, Mahanoy Deputy Superintendent Edward Klem, Mahanoy Unit Manager James Unell, Mahanoy Counselor John L. Johnson, Mahanoy Security Officer John Doe, DOC Secretary Martin Horn, DOC Deputy Commissioner William J. Love, DOC Coordinator of Classification Don Williamson, Pittsburgh Superintendent James S. Price, and Pittsburgh Counselor Dan DeFlora (collectively "defendants" or "Commonwealth defendants"), pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth and Fourteenth Amendment rights in addition to state law tort claims. Plaintiff also seeks injunctive and declaratory relief.

Presently before the Court is the motion of the Commonwealth defendants to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(1) (Document No. 22), and the response of plaintiff David McGrath ("McGrath") thereto. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 & 1334. The Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367. Based on the following analysis, the motion will be granted in part and denied in part.

## I. Background

McGrath is serving an 11–to–30–year sentence for murder, criminal conspiracy, possessing an instrument of crime, and two counts of aggravated assault to which he pled guilty. His minimum sentence date expired October 24, 1995; his maximum sentence date runs until October 24, 2014.

On April 21, 1996, McGrath incurred a misconduct for threatening Mahanoy Corrections Officer Koles and the officer's family with bodily harm, refusing to obey and order and using abusive or obscene language to an employee. McGrath was found guilty of the misconduct and appealed the decision. The Program Review Committee sustained the misconduct but released McGrath to a Level 3 housing unit on May 20, 1996, after serving thirty days of disciplinary custody sanction for the misconduct conviction.

On July 15, 1996, McGrath attempted to file a private criminal complaint in the Schuylkill County Court of Common Pleas against Officer Koles. (Amended Complaint ¶¶ 12, 22). McGrath filed the complaint because he believed that the misconduct was false and retaliatory. The Schuylkill County District Attorney ("DA") disapproved McGrath's attempted private criminal complaint because it is the practice of the DA to turn such matters over to the Special Investigations Unit of the Department of Corrections. (Id. at ¶ 13). On August 23, 1996, McGrath filed a Petition for Review of the criminal complaint.

On August 30, 1996, McGrath was interviewed and "hired" by the Mahanoy prison library manager as a law library research aid. (Id. at ¶ 15). However, in the first

week of September, McGrath was told that he would not be hired. In his complaint, McGrath alleges Officer John Doe told the library manager not to hire McGrath. (*Id.* at ¶ 16). McGrath claims he was denied employment in retaliation for filing a private criminal complaint. (*Id.* at ¶ 17). McGrath further alleges that he wrote to defendant Klem about the "special denial of employment" and appealed to him for assistance. (*Id.*).

On September 23, 1996, the Assistant District Attorney filed a response to the Petition for Review of McGrath's private criminal complaint. McGrath filed a reply, objecting to the denial because he (the victim of the alleged crime) was not interviewed and because having the DOC investigate itself was inadequate.[1] On October 15, 1996, McGrath moved for an evidentiary hearing in Schuylkill County and, in the alternative, requested an external investigation. On October 17, 1996, copies of McGrath's criminal complaint were served upon Mahanoy Superintendent Dragovich.

Also on October 17, 1996, Corrections Counselor Johnson conducted the annual review of McGrath's custody level classification, known as the Pennsylvania Additive Classification Tool ("PACT"). (*Id.* at ¶ 23). As a result of the PACT review, McGrath's custody level was upgraded from level three to level four. (*Id.* at ¶ 24).[2] His custody level was increased because his institutional records showed that McGrath had thirty-seven to thirty-eight misconducts. McGrath further alleges that Johnson stated that he was acting on "order from the top." (*Id.* at ¶ 33).

McGrath filed a grievance regarding the number of misconducts in his record. Despite McGrath's protestations, he was informed that he would remain in custody level four until his re-PACT in February 1997. On March 24, 1997, the number of class I misconducts was corrected to reflect eleven misconducts.

McGrath avers that his records accurately reflected eleven misconducts prior to filing a private criminal complaint but that after filing the complaint his records inexplicably reflected over thirty misconducts. (*Id.* at ¶¶ 33, 34). He further alleges that his increase in custody level was based upon these fictional misconducts. The increase in custody level in turn caused him to be transferred from a "minimum/medium" security prison near his home in Philadelphia to a "maximum" security prison in Pittsburgh. (*Id.* at ¶¶ 40, 41). On February 7, 1997, McGrath was placed in restricted housing ("RHU"). He never received a hearing on the reasons for his placement in RHU "as required by law and policy." (*Id.* at ¶ 41, 69). He alleges that his records were falsified to circumvent the DOC classification policies and to increase his custody level and transfer him in order to punish him for filing a private criminal complaint. (*Id.* at ¶¶ 48, 49).

McGrath further alleges that SCI Pittsburgh was a known place of danger to him as he had previously received threats to his life there. He avers that his transfer to Pittsburgh was intentionally designed to harm him because it was easy to foresee that he would either be harmed or locked up in the "hole." In short, he alleges that his transfer was punishment without a violation of the rules and in retaliation for filing a private criminal complaint. (*Id.* at ¶ 41–44).

McGrath also alleges that the falsified misconducts in his record resulted in his

---

**1.** On October 31, 1996, detectives from the DA's office conducted a criminal investigation, interviewing McGrath, correctional officers and other witnesses. On November 2, 1996, McGrath sent a letter to the DA's office informing them that witnesses that had supplied information to the DA's office were harassed and threatened. On November 8, 1996, Judge Baldwin issued an Order affirming the DA's decision to turn McGrath's complaint over to the Department of Corrections Special Investigations Unit.

**2.** McGrath alleges that he first learned of this change in his custody level on November 15, 1996. (*Id.* at ¶ 29).

being denied parole by defendants DeFlora and Price. He alleges that the manufacturing and documenting of false reports shortly before a schedule parole hearing effectively removed his opportunity to secure a recommendation for parole. (*Id.* at ¶ 55). McGrath further alleges that DeFlora was provided with documents that showed the records to be inaccurate but that he "recklessly used false records to draft my parole paperwork." (*Id.* at ¶ 44). McGrath also alleges that being in RHU lock-up at the time of his parole hearing negatively impacted his opportunity to secure parole. (*Id.* at 76).

## II. Legal Standard

The defendants have moved to dismiss McGrath's complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). On a motion to dismiss, the district court must read a pro se plaintiff's allegations liberally and apply a less stringent standard to the pleadings of a pro se plaintiff than to a complaint drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gibbs v. Roman,* 116 F.3d 83, 86 n. 6 (3d Cir.1997).

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must determine whether the plaintiff is entitled to relief under any set of facts consistent with the allegations of the complaint. *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994). In deciding a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint must be accepted as true and all reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to

the plaintiff. *Id.* A motion to dismiss should only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (section 1983 claims are to be evaluated in accordance with the liberal standard enunciated in Rule 8(a)).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) is proper only when "the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991). Thus, the threshold required to withstand a motion to dismiss under 12(b)(1) is lower than that required to withstand a Rule 12(b)(6) motion. *Id.; White v. United States Government Dept. of the Treasury,* 969 F.Supp. 321, 323 (E.D.Pa.), *aff'd,* 135 F.3d 768 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2385, 141 L.Ed.2d 750 (1998). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion, whereas under 12(b)(6) the defendant bears the burden to demonstrate that no claim has been stated. *Id.* However, for purposes of ruling on a motion to dismiss for want of standing, as here, "the trial court . . . must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also United States v. AVX Corp.,* 962 F.2d 108, 114 (1st Cir. 1992); *Pfizer Inc. v. Elan Pharm. Research Corp.,* 812 F.Supp. 1352, 1357 n. 6 (D.Del.1993).[3]

---

**3.** Both the *AVX* and *Pfizer* Courts analyzed motions to dismiss for lack of standing under a 12(b)(6) standard while recognizing that a Rule 12(b)(1) motion provides a closer analo-

gy. *Pfizer,* 812 F.Supp at 1357 n. 6; *AVX,* 962 F.2d at 114. As none of the parties raised the issue of whether a 12(b)(1) standard is appropriate, neither Court decided the

## III. Discussion

Defendants argue that McGrath's complaint should be dismissed for various reasons. Defendants argue that McGrath lacks standing because he has not alleged an injury and is precluded from bringing suit by statute because he has failed to allege a physical injury. The defendants also argue that some of McGrath's claims are barred because he failed to exhaust his administrative remedies. They argue further that his claims for injunctive relief are moot and that the Eleventh Amendment bars his other claims against those defendants that he is suing in their official capacities. In addition, defendants argue that McGrath failed to state a claim under the First Amendment, Eighth Amendment and Fourteenth Amendment as well as under state law. Finally, defendants argue that sovereign immunity bars any state law claim McGrath could reasonably allege against these defendants.

### A. Standing

In order to have standing to bring a lawsuit in federal court, a plaintiff must satisfy the requirements of Article III of the United States Constitution. U.S. Const. art. III, § 2; *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir.1992). The requirements of Article III standing (that there be a case or controversy) are satisfied when a plaintiff demonstrates that: (1) he has suffered an actual or threatened injury; (2) that the injury was caused by the allegedly illegal action of the defendants; and (3) that the injury must be subject to redress by a favorable decision in the district court. *Schering Corp. v. Food & Drug Admin.*, 51 F.3d 390, 395 (3d Cir.), *cert. denied*, 516 U.S. 907, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995).

Here, defendants argue that McGrath does not have standing because he has not suffered an actual injury. Specifically, defendants appear to argue that McGrath has not alleged a physical injury. This argument is wholly without merit. For purposes of standing, a plaintiff need not allege a physical injury. Allegations that the defendants violated his constitutional rights will suffice. Indeed, the "injury" McGrath has alleged is that the defendants retaliated against him for exercising his First Amendment rights.

Defendants also argue, however, that McGrath lacks standing because as of February 10, 1999, McGrath was no longer in restricted housing but had returned to the general population, that his current custody level was three and that he had a job in the prison law library. Defendants' argument is specious and its assertion that the Court should dismiss the lawsuit claim for lack of standing is irresponsible. Under defendants' reasoning, anyone who has suffered a constitutional violation that is not ongoing or anyone who is not presently suffering the consequences of defendant's unconstitutional conduct is precluded from having his or her claim her for heard for lack of standing. Here, McGrath has alleged that the defendants' have retaliated against him in violation of his First Amendment rights. *See Castle v. Clymer*, 15 F.Supp.2d 640, 659 (E.D.Pa.1998) (prisoners may not be retaliated against for engaging in constitutionally protected activity even if act taken for other reasons would have been proper). The violation of a constitutionally protected right is a sufficient injury for purposes of standing.

At best, defendants can be understood to argue that McGrath's claims for prospective injunctive relief will not remedy his past constitutional injury and, therefore, he has no standing to bring this lawsuit. *See Erb v. Judge*, 1994 WL 523203, at *2 (E.D.Pa. Sept.23, 1994), *aff'd*,

---

issue. *Id.* However, because I agree that 12(b)(1) serves as a better analogy and because the defendants brought this motion to dismiss for want of standing pursuant to

12(b)(1), it will be analyzed under a 12(b)(1) standard. *See Warth*, 422 U.S. at 501, 95 S.Ct. 2197; *AVX*, 962 F.2d at 114 n. 6.

60 F.3d 814 (3d Cir.1995). This, however, ignores the fact that McGrath not only seeks prospective injunctive relief but also declaratory relief and compensatory and punitive damages. *See Winsett v. McGinnes*, 617 F.2d 996, 1004 (3d Cir. 1980) (en banc) (although injunctive relief is moot because prisoner was released on parole, "claims for damages and for declaratory relief as a predicate to damages, are not"), *cert. denied sub nom Anderson v. Winsett*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981).

## B. Mootness

 In a related argument, defendants assert that McGrath's claims for injunctive relief as to the Mahanoy defendants are moot. The "inability of the federal judiciary 'to review moot cases derives from Article III of the Constitution under which the exercise of judicial power depends on the existence of a case or controversy.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (quoting *Liner v. Jafco Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964)). "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Central Power & Light Co. v. State of N.J.*, 772 F.2d 35, 39 (3d Cir.1985). Thus, when a prisoner is no longer in custody, his claims for injunctive relief with respect to prison conditions are, as a general matter, moot. *Abdul–Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir.1993). Similarly, when a prisoner is transferred, his claims regarding certain conditions existing at one facility *may* become moot. *See McPherson v. Coombe*, 992 F.Supp. 229, 232 (W.D.N.Y.1997). The analysis focuses on whether there is an actual controversy and whether the court can provide the plaintiff with meaningful relief. *See Abdul–Akbar*, 4 F.3d at 206; *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 915–16 (3d Cir.1987) ("The availability of effective relief is one measure of the existence of a continuing controversy between parties with cognizable interests in the outcome.").

Here, it appears that McGrath is no longer subject to the some of the conditions he is challenging—his current custody level is three, he is no longer in restricted housing, and he has a job at the law library. In addition, McGrath has indicated that the staff at Albion "are professionals and have not sought revenge." (Def.Mem.Exh. D–12). Furthermore, there is no indication that McGrath's transfer is not a permanent one. *Lane v. Reid*, 559 F.Supp. 1047,1050 (S.D.N.Y. 1983). Thus, there is no evidence that McGrath will be subjected to similar treatment in the future. *See Abdul–Akbar*, 4 F.3d at 206 (discussing "capable of repetition" exception to mootness doctrine). Accordingly, the claims for injunctive relief against the Mahanoy defendants and the Pittsburgh defendants will be dismissed as moot.[4]

## C. Venue

 Defendants inexplicably argue that venue is not proper as to defendants Price and DeFlora (who reside in the Western District of Pennsylvania) or as to defendants Horn, Williamson, and Love (who reside in the Middle District of Pennsylvania) and, therefore, this action should either be transferred or dismissed. This argument is frivolous and contrary to the express terms of the statute governing venue. Here, venue is governed by 28 U.S.C. § 1391(b) which states in relevant

---

4. Although McGrath's claim for injunctive relief against the Mahanoy defendants is moot, his claims for damages and for declaratory relief, as a predicate for damages, are not. *Winsett*, 617 F.2d at 1004. Thus, the fact that McGrath's claims for injunctive relief are moot does not provide a basis for dismissing the complaint against the Mahanoy defendants, either in their official capacity or individual capacity.

part: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state...." Thus, if all the defendants to an action reside in the same state, then "the district of residence of any one of them ... is a proper venue." 28 U.S.C. § 1391 (commentary on the 1998 and 1990 revisions of Section 1391). Here, all the defendants reside in Pennsylvania and the Mahanoy defendants reside in the Eastern District of Pennsylvania. Thus, venue is proper.

### D. Mental and Emotional Injuries, 42 U.S.C. § 1997e(e)

■ An inmate may not bring a federal cause of action for mental or emotional injury absent a prior showing of physical injury. 42 U.S.C. § 1997e(e).[5] In his complaint, McGrath alleges that he required treatment for a skin condition that gets inflamed during periods of extreme mental and emotional pain. (Complaint at ¶ 79). In addition, McGrath alleges that the condition was so noticeable that he was tested for Lupus. (*Id.*)

Asserting that alleged constitutional violations caused an emotional trauma which manifested itself by causing a preexisting skin condition to become inflamed does not satisfy the statutory prerequisite that McGrath make a showing of a prior physical injury from the defendants' conduct. *See, e.g., Cain v. Commonwealth of Virginia*, 982 F.Supp. 1132, 1135 n. 3 (E.D.Va. 1997) (headaches causing vision loss and requiring pain medication as well as numbness, joint pain and stomach cramps not

physical injury within scope of § 1997e(e)); *Pinkston–Bey v. DeTella*, 1997 WL 158343, at *3 (N.D.Ill. March 31, 1997) (sever headaches not physical injury). Thus, to the extent that McGrath alleges emotional and mental injuries (and seeks associated damages), his claims will be dismissed.[6]

■ Nevertheless, the defendants assert that "all plaintiff's claims should be dismissed, because he fails to allege a physical injury." (Memorandum of Law in Support of Commonwealth Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Def.Mem.") at 12). This assertion is without merit. The statute only bars claims for mental or emotional injuries absent a physical injury. *See* 42 U.S.C. § 1997e(e); *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir.1999) ("Section 1997e(e), as its wording makes clear, is applicable only to claims for mental and emotional injury. It has no application to a claim involving another type of injury") *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir.1998) ("The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have occurred. Therefore, § 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought."); *Amaker v. Goord*, 1999 WL 511990, at *5 (S.D.N.Y. July 20, 1999) (" § 1997e(e) does not deny a prisoner the ability to bring all federal lawsuits without a showing of physical injury. It only prevents a plaintiff from bringing a claim for 'mental or emotional injury' without a showing of physical injury."). Moreover, § 1997e(e) does not purport to limit a

---

**5.** The statute provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

**6.** In addition, his claim that he was tested for Lupus does not satisfy the requirement that he make a showing of a physical injury. *Cf. Zehner v. Trigg*, 952 F.Supp. 1318, 1322

(S.D.Ind.) (physical injury requirement of § 1997e(e) is not broad enough to encompass inhalation or ingestion of asbestos without proof of resulting disease of other adverse physical effects), *aff'd*, 133 F.3d 459 (7th Cir. 1997). Here, there is no allegation that McGrath actually contracted Lupus as a result of defendants' conduct; nor is there a causal nexus between Lupus and the alleged constitutional violations.

prisoner's ability to receive injunctive relief to remedy constitutional violations which are not physically injurious. *See, e.g., Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807–09 (10th Cir.1999); *Davis v. Dist. of Columbia*, 158 F.3d 1342, 1346 (D.C.Cir.1998). Thus, § 1997e(e) only bars McGrath's claims for mental and emotional injuries.

**E. Administrative Exhaustion, 42 U.S.C.1997e(a)**

█ A prisoner may not bring an action "with respect to prison conditions" under any federal law until he or she has exhausted available administrative remedies.[7] 42 U.S.C. § 1997e(a); *Hanson*, 37 F.Supp.2d at 400–01. The Pennsylvania Department of Corrections has set forth

7. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted." The Prison Litigation Reform Act ("PLRA"), which implemented this change to § 1997e(a), does not define "prison conditions." *Jones v. Culinary Manager II*, 30 F.Supp.2d 491, 494 (E.D.Pa.1998). Some courts have determined that the definition of "prison conditions" used elsewhere in the PLRA are incorporated into this section. *See Beeson v. Fishkill Correctional Facility*, 28 F.Supp.2d 884, 888–96 (S.D.N.Y.1998); *Hollimon v. DeTella*, 6 F.Supp.2d 968, 969 (N.D.Ill.1998); *Morgan v. Arizona Dep't. of Corrections*, 976 F.Supp. 892, 895–96 (D.Ariz. 1997). These courts have determined that § 1997e(a) adopts the definition of prison conditions found in 18 U.S.C. § 3626g(2) (which was part of the PLRA). Section 3626g provides that "(2) the term 'civil action with respect to prison conditions' means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison...." 18 U.S.C. § 3626g(2). These courts have thus determined that complaints ranging from failure to protect from strip searches to sexual harassment meet this definition and require exhaustion of administrative remedies. *See generally Bradford v. Moore*, 1998 WL 476206, *1, 156 F.3d 1228 (6th Cir. Aug. 3, 1998) (destruction of property, tainting of food and sexual harassment) (unpublished table decision); *Hollimon*, 6 F.Supp.2d at 969 (strip searches); *Morgan*, 976 F.Supp. at 895–96 (failure to protect). Other courts analyzing the meaning of the term "prison conditions," citing *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), have made a distinction between Eighth Amendment claims for use of excessive force, which these courts have determined does not require exhaustion under § 1997e(a), and conditions of confinement claims. *See White v. Fauver*, 19 F.Supp.2d 305, 312–19 (D.N.J.1998); *Johnson v. O'Malley*, 1998 WL 292421, * 1 (N.D.Ill. May 19,

1998); *Rodriguez v. Berbary*, 992 F.Supp. 592, 593 (W.D.N.Y.1998). Here, there is no claim for excessive use of force and McGrath does not argue that § 1997e(a) does not apply. I find that his claims are related directly to the conditions of his confinement and, therefore, § 1997e(a) applies.

Although neither party has addressed the issue, there is also a significant split among the courts which have addressed the issue of whether the exhaustion requirement of § 1997e(a) applies to claims for monetary damages. *Compare Garrett v. Hawk*, 127 F.3d 1263, 1266–67 (10th Cir.1997) (federal prisoners seeking purely monetary damages need not exhaust administrative remedies) *with Alexander v. Hawk*, 159 F.3d 1321, 1325–27 (11th Cir.1998) (suggesting that exhaustion is required even if prisoner seeks only monetary damages). The rationale for allowing a suit for purely monetary damages to proceed without requiring exhaustion of administrative remedies is that if the administrative remedies do not provide for money damages then there is no "available administrative procedure to exhaust." *See, e.g., Whitley v. Hunt*, 158 F.3d 882, 886–87 (5th Cir.1998); *White*, 19 F.Supp.2d at 317. However, a growing number of district courts have reasoned that § 1997e(a) applies to claims for monetary damages. *See Vasquez v. Artuz*, 1999 WL 440631, at * 5 (S.D.N.Y. June 28, 1999) (collecting cases); *Langford v. Couch*, 50 F.Supp.2d 544, 546 n. 9 (E.D.Va.1999) (collecting cases). Many of these courts reason that there is no basis in the text of § 1997e(a) to require that the remedies sought by an inmate be identical as between the administrative and judicial proceedings. *See, e.g., Cruz v. Jordan*, 1999 WL 557519, at *8, —— F.Supp.2d —— (S.D.N.Y. July 28, 1999). In addition, courts have reasoned that: (1) allowing claims for monetary damages to avoid exhaustion would circumvent the stated purpose of the PLRA—to reduce the volume of frivolous prisoner suits; (2) reading the statute to apply only were the administrative scheme provides adequate relief would essentially reintroduce the requirement of an "effective administrative remedy" after Congress

the administrative remedies available to prisoners in its Consolidated Inmate Grievance Review System, DC–ADM804. *See Jones v. Oldt*, 30 F.Supp.2d 491, 495 (E.D.Pa.1998); *see also* 97 Pa.Cons.Stat. Ann. § 93.9(a) (1999). To exhaust the formal grievance procedure established by the Pennsylvania Department of Corrections, a prisoner must first file a grievance. If he is not satisfied with the result, he must then appeal the initial review to the Superintendent, and if he is still dissatisfied, he must appeal for final review which is conducted by the Central Office Review Committee. According to McGrath, the inmate handbook also provides for informal review. Indeed, prisoners are expected to attempt to resolve problems through direct contact or by sending a request slip to an appropriate staff member. Initial review of such an informal grievance is conducted by a grievance officer and further appeals must be made first to the Superintendent and then the Central Office Review Committee. (Prisoner Complaint Form, at unnumbered 4).

■ Here, there is no dispute that McGrath filed a formal grievance and exhausted the appeals process with respect to the PACT determination and number of misconducts contained in his records. The defendants assert, however, that McGrath has failed to exhaust his administrative remedies with respect to his transfer and the loss of his law library job and "any other issues he raises in his complaint." (Def.Mem. at 13). Although McGrath asserts that an administrative transfers is not appealable to the Central Office Review Committee, he does not allege that he filed a grievance regarding his transfer or that he appealed to the Superintendent. Nor does he allege that an administrative transfer cannot be addressed through the grievance procedures. Thus, his claims relating to his transfer will be dismissed for failure to exhaust administrative remedies.

■ However, McGrath alleges that he filed an informal grievance with Deputy Superintendent Klem about having his library job offer rescinded. (Prisoner Complaint Form, at unnumbered 5). Furthermore, by indicating that a job would be found for McGrath, the response from Deputy Superintendent Klem indicated that the grievance had been resolved in McGrath's favor. As such, McGrath alleges that the grievance was, on paper, successfully resolved in his favor (although he claims that more than six months later, no action had been taken). McGrath further asserts that a successful resolution of a grievance cannot be appealed. Thus, McGrath exhausted his administrative remedies with respect to the issue of obtaining employment.

■ Finally, McGrath alleges that being placed in Administrative Custody is not addressable through the grievance procedures. (Prisoner Complaint Form, at unnumbered 6 at ¶ 6). McGrath further argues that because he was deemed to have requested protective custody (McGrath disputes that he ever requested protective custody), no hearing was held and, consequently, there was no opportunity for McGrath to appeal the determina-

had deleted it; (3) comprehensive exhaustion promotes judicial efficiency while protecting administrative agency authority; and (4) the interests of prisoners are not compromised by requiring exhaustion. *See, e.g., Cruz,* 1999 WL 557519, at *8–*10, —— F.Supp.2d at ——; *Vasquez,* 1999 WL 440631, at *5–*8; *Beeson,* 28 F.Supp.2d at 892–95; *Moore v. CO2 Smith,* 18 F.Supp.2d 1360, 1364 (N.D.Ga.1998). I agree. The text of § 1997e(a) requires exhaustion and does not provide a basis for excluding claims for monetary damages. Allowing McGrath to circumvent the exhaustion

requirement simply by including a claim for damages would eviscerate § 1997e(a). *Hanson v. Chesney,* 37 F.Supp.2d 399, 401 (E.D.Pa.1999). Thus, to the extent that McGrath has access to the grievance procedures, he must exhaust the remedies available to him before bringing suit in federal court. By the same token, however, if there is no avenue for administrative relief, i.e., if a prisoner is precluded from using the grievance procedures or if an administrative decision is unappealable, there can be no failure to exhaust administrative remedies.

tion to put him in administrative custody. Moreover, McGrath asserts that he attempted to file a grievance but that there is an exception under the grievance policy which exempts issues concerning the administrative custody procedures from the grievance procedures. Thus, for purposes of surviving a motion to dismiss, McGrath has sufficiently alleged that there was no avenue for him to pursue administrative remedies with respect to his administrative custody claims.

### F. Eleventh Amendment

■■■■■ It is well established that, absent consent by the state, suits against officials in their official capacities for money damages are barred by the Eleventh Amendment. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Pennsylvania has expressly withheld such consent. 42 Pa.Cons.Stat.Ann. § 8521(b). The Eleventh Amendment also bars actions under 42 U.S.C. § 1983 for money damages against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Suits against state officials for injunctive relief, however, are not prohibited, nor are suits against state officials for actions in their individual capacities. *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■■■■ McGrath has brought claims against defendants Horn, Unell, Dragovich, Klem, Price, Williamson, and Love in both their individual and official capacities. McGrath also seeks both monetary and equitable relief. Thus, to the extent that the complaint seeks monetary damages from defendants Horn, Unell, Dragovich, Klem, Price, Williamson, and Love in their official capacities, his claims are barred by the Eleventh Amendment. However, to

the extent that McGrath seeks equitable relief (that is not moot, *see supra* Section III, part B) from defendants Horn, Unell, Dragovich, Klem, Price, Williamson, and Love in their official capacities and seeks both monetary and equitable relief from the defendants in their individual capacities, the Eleventh Amendment does not bar McGrath's claims. Thus, the defendants motion will be granted in part and denied in part on this basis.

### G. Sovereign Immunity

■■■■ The doctrine of sovereign immunity bars damage claims for state law torts against employees of Commonwealth agencies acting within the scope of their duties, except for several narrow enumerated exceptions. 1 Pa.Cons.Stat.Ann. § 2310; 42 Pa.Cons.Stat.Ann. § 8522; *Tinson v. Commonwealth,* 1995 WL 581978, at *6 (E.D.Pa. Oct.2, 1995); *La Frankie v. Miklich,* 152 Pa.Cmwlth. 163, 618 A.2d 1145, 1148–49 (1992). Sovereign immunity applies to claims asserted against Commonwealth employees in their individual capacities. *Maute v. Frank,* 441 Pa.Super. 401, 657 A.2d 985, 986 (1995). In addition, Commonwealth employees are immune from liability even for intentional torts.[8] *La Frankie,* 618 A.2d at 1149.

The Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity. *See Maute,* 657 A.2d at 986 (state prison officials enjoy sovereign immunity); *Robles v. Pennsylvania Dept. of Corrections,* 718 A.2d 882, 884 (Pa.Cmwlth.1998) (same). As set forth in the complaint, the acts for which the defendants are being sued were conducted within the scope of their duties as employees of the Department of Corrections. None of the narrow exceptions

---

**8.** Local agency employees, however, lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct. 42 Pa.Cons.Stat.Ann. § 8550; *Cassidy v. Abington Township,* 131 Pa.Cmwlth. 637, 571 A.2d 543, *allocatur denied,* 527 Pa. 652, 593 A.2d 424 (1990).

to sovereign immunity apply here.[9] *See* 42 Pa.Cons.Stat.Ann. § 8522(b). Thus, McGrath's state law claims will·be dismissed.

## H. Failure To State A Claim

 McGrath brings this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his First, Eighth and Fourteenth Amendment rights. There are two essential elements to any § 1983 action: (1) whether the conduct complained of was committed under state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993).

 It is well established that liability under § 1983 cannot be predicated on the operation of respondeat superior. In order to be liable, a defendant in a § 1983 action must have personal involvement in the alleged wrong. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997). With respect to supervisory liability, the requirement of "actual knowledge and acquiescence" suffices because it can be equated with "personal direction" and "direct discrimination by the supervisor." *Id.*

 Defendants argue that McGrath fails to state a claim with respect to defendants Horn, Love and Williamson because he does not allege that they were personally involved in any of his claimed constitutional violations. However, a motion to dismiss for failure to state a claim can only be granted if "it is clear that no relief could be granted under any set of facts that could be ·proved consistent with the allegations." *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229; *see also Leatherman*, 507 U.S. at 169, 113 S.Ct. 1160. Moreover, the Court is obligated to read pro se plaintiff's allegations liberally and apply a less strin-

gent standard to the pleadings of a pro se plaintiff than to a complaint drafted by counsel. *Haines*, 404 U.S. at 520–21, 92 S.Ct. 594 Here, McGrath alleges a widespread conspiracy to retaliate against him and a conspiracy to violate his constitutional rights. He alleges that these defendants "had knowledge" of and acquiesced in the alleged violations. He also alleges that the orders came "from the top." Thus, for purposes of a motion to dismiss, he has sufficiently pled the personal involvement of defendants Horn, Love and Williamson.

### 1. *Retaliation*

 "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir.1990); *Madewell v. Roberts*, 909 F.2d 1203, 1206–07 (8th Cir.1990) (alleged retaliation against inmate need not itself amount to a violation of inmates constitutional rights in order to permit inmate to maintain § 1983 action); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir.1986) (per curiam) (otherwise constitutional actions, when taken in retaliation for filing lawsuit, violate inmate's First Amendment rights and right to access the courts). To state a claim for retaliation, a plaintiff must allege that: (1) he or she engaged in protected conduct; (2) he or she was subjected adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the alleged adverse action. *Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir.1997).

 Defendants concede that filing a complaint constitutes protected conduct but assert that McGrath has failed to allege that each of the defendants knew of

---

9. The enumerated exceptions are: vehicle liability, medical-professional liability, liability arising from the Commonwealth's control of personal property, real property or animals,

liability relating to state liquor store sales, the National Guard or toxoids or vaccines. 42 Pa.Cons.Stat.Ann. § 8522(b).

the conduct and, therefore, fails to state a claim. In particular, defendants argue that McGrath fails to allege that defendant Johnson was aware that McGrath filed a complaint. However, in his complaint McGrath alleges that Johnson "acted with or aided other defendants ... to manufacture or use false records ... to support justification for plaintiff's transfer. These acts were designed to punish for reporting crimes to the courts." (Complaint at ¶ 49, incorporated in ¶ 50 under claim for retaliation). Moreover, McGrath alleges that Johnson indicated to him that Johnson was acting under "orders from the top." To survive a motion to dismiss, McGrath need only allege a cause of action, he need not prove it. His complaint adequately sets forth a cause of action for retaliation.

2. *Eighth Amendment*

■ The Eighth Amendment of the United States Constitution prohibits excessive bail, excessive fines and "cruel and unusual punishment." U.S. CONST. amend. VIII. The Eighth Amendment's prohibition on "cruel and unusual punishment" has been interpreted to prohibit any punishment which violates civilized standards and concepts of humanity and decency. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Young v. Quinlan*, 960 F.2d 351, 359–61 (3d Cir. 1992). Although inmates are sent to prison for punishment, the prison environment itself may not be so brutal or unhealthy as to be punishment in and of itself. *Young*, 960 F.2d at 359. Thus, with regard to prison conditions, routine discomfort is part of the penalty criminal offenders pay for their offenses against society, and " 'only those deprivations that deny the minimal civilized measure of life's necessities' are sufficiently grave to form the

basis of an Eighth Amendment violation.' " *Hudson v. McMillian*, 503 U.S. 1, 8–9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

■ A prison official may be held liable under section 1983 for violating a prisoner's Eighth Amendment right against cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment encompasses the treatment a prisoner receives while incarcerated, provided two elements are met. *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970; *Culinary Manager II*, 30 F.Supp.2d at 497. The first element is objective; whether the constitutional deprivation was sufficiently serious. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Young*, 960 F.2d at 359. The second element is subjective; whether the official had a "sufficiently culpable state of mind." *Young*, 960 F.2d at 360.

■ McGrath does not allege that he suffered a deprivation of basic human needs such as food, clothing, shelter, sanitation, medical care, or personal safety.[10] *Payton v. Horn*, 49 F.Supp.2d 791, 796 (E.D.Pa.1999) (citing *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir.1997)). In *Griffin*, the Court of Appeals for the Third Circuit held that conditions in administrative custody, under the same Pennsylvania regulations at issue in this case, "clearly do not involve a deprivation of any basic human need." 112 F.3d at 709. Although McGrath claims he should never have been put in administrative custody or transferred in the first instance, he does not allege that the conditions of his confinement were different than those of other prisoners in administrative custody. *See Payton*, 49 F.Supp.2d at 796. Accepting

10. McGrath claims that prison officials knew that his life had been threatened during a prior stay at SCI–Pittsburgh and that by transferring him there, prison officials intended to either expose him to death or have him locked up in the "hole." However, McGrath was not incarcerated with the general population, but was kept in administrative custody. Accordingly, McGrath's personal safety was not threatened. Rather, he can be understood to be claiming that being transferred and held in administrative custody was cruel and unusual punishment.

as true all of McGrath's allegations and all reasonable inferences that may be drawn from them, and construing them in the light most favorable to McGrath, I find that McGrath has failed to state a claim that he was subjected to cruel and unusual punishment.

### 3. *Fourteenth Amendment*

The Fourteenth Amendment of the United States Constitution declares that no "State [shall] deprive any person of life, liberty, or property, without due process of law...." Accordingly, a "liberty interest" of constitutional dimension may not be abrogated by governmental action without certain procedural safeguards. U.S. Const. Art. XIV. Such a "liberty interest" may be derived from one of two sources: The interest may be of such a fundamental nature that it inheres in the Constitution itself or it may be created by state law. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223–27, 96 S.Ct. 2532, 49 L.Ed.2d 451, *reh. denied* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976)).

To state a claim for a violation of the Fourteenth Amendment's Due Process Clause, a plaintiff must allege: (1) that he or she was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected him, or caused him to be subjected to this deprivation without due process; and (4) that the defendant was acting under color of state law; and (5) that he or she suffered an injury as a result of this deprivation without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989).

Broadly construing McGrath's complaint, it appears that he is alleging that his placement in administrative segregation without a hearing "as required by law and policy" violated his Fourteenth Amendment Due Process rights.[11] To determine whether segregation of an inmate from the general population involves the deprivation of a state-created liberty interest protected by the Due Process clause of the Fourteenth Amendment, the segregation must impose an "atypical and significant" hardship on the inmate in "relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997).

McGrath has not alleged that the conditions he experienced in administrative custody imposed upon him any "atypical and significant hardship." *See Sandin*, 515 U.S. at 484–85, 115 S.Ct. 2293; *Griffin*, 112 F.3d at 706. Moreover, as alleged in his complaint, exposure to the conditions of administrative custody for a period of eight months is not atypical and did not deprive him of a liberty interest. *See Griffin*, 112 F.3d at 708 (fifteen months in administrative segregation without a hearing did not deprive prisoner of liberty interest). Finally, the failure to hold a hearing prior to placement in administrative custody is not a violation of procedural due process guaranteed by the United States Constitution.[12] *Griffin*, 112 F.3d at

**11.** The Department of Corrections has issued a policy statement regarding the two basic types of restrictive housing, disciplinary custody and administrative custody. Both directives, however, state that "'this directive does not create any rights in any person nor should it be applied to abridge the rights of any individual.'" *Nelson v. Miranda*, 1997 WL 327381, at *2 n. 2 (E.D.Pa. May 6, 1997) (quoting DC–ADM 801 & 802).

**12.** To the extent that McGrath's complaint can be understood to allege that he was deprived of his due process rights as protected by the Fourteenth Amendment with regard to being involuntarily transferred or before the parole board, his claim is without merit. *See Nelson*, 1997 WL 327381, at *5 (prisoner cannot contest the unconstitutionality of procedural devices attendant to parole decision because prisoner had no liberty interest in obtaining parole under Pennsylvania law); *Davage v. U.S.*, 1997 WL 180336, at *4 (E.D.Pa. April 16, 1997) (no liberty interest in staying a particular institution, even if transfer results in being placed in more restrictive or less accessible facility);

706. Because McGrath has failed to allege that he was deprived of a protected liberty interest, his claim under the Fourteenth Amendment for violations of his due process rights will be dismissed.

## IV. Conclusion

Based upon the foregoing memorandum, the motion will be granted in part and denied in part. An appropriate Order follows.

### *ORDER*

**AND NOW** this 24th day of September, 1999, upon consideration of the motion of defendants Mahanoy Superintendent Martin L. Dragovich, Mahanoy Deputy Superintendent Edward Klem, Mahanoy Unit Manager James Unell, Mahanoy Counselor John L. Johnson, Mahanoy Security Officer John Doe, Department of Corrections ("DOC") Secretary Martin Horn, DOC Deputy Commissioner William J. Love, DOC Coordinator of Classification Don Williamson, Pittsburgh Superintendent James S. Price, and Pittsburgh Counselor Dan DeFlora to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(1) (Document No. 22), and the response of plaintiff David McGrath ("McGrath") thereto, it is hereby **ORDERED** that:

1. Plaintiff's claim for injunctive relief against Mahanoy defendants Martin L. Dragovich, Edward Klem, James Unell, John L. Johnson and Officer John Doe as well as Pittsburgh defendants James S. Price and Dan DeFlora is **DISMISSED AS MOOT**.

2. Plaintiff's claims for mental and emotional injuries are **DISMISSED** pursuant to 42 U.S.C. § 1997e(e).

3. Claims alleging an unconstitutional transfer are **DISMISSED** for failure to exhaust available administrative remedies pursuant to pursuant to 42 U.S.C. § 1997e(a).

4. Plaintiff's request for damages from defendants Horn, Unell, Dragovich, Klem, Price, Williamson, and Love in their official capacities is **STRICKEN**.

5. Plaintiff's state law claims are **DISMISSED WITH PREJUDICE**.

6. Plaintiff's claim under the Eight Amendment is **DISMISSED FOR FAILURE TO STATE A CLAIM**.

7. Plaintiff's claim under the Fourteenth Amendment is **DISMISSED FOR FAILURE TO STATE A CLAIM**.

**IT IS FURTHER ORDERED** that the motion is otherwise **DENIED**. Thus, remaining are: (1) a claim for injunctive relief against defendants Horn, Love and Williamson; (2) a claim for declaratory relief against all defendants; (3) a First Amendment claim for retaliation and the associated allegations of the alleged retaliatory conduct.

**IT IS FURTHER ORDERED** that defendants shall answer the Amended Complaint no later than **October 18, 1999**.