**Aaron WICKS, Plaintiff,**

v.

**Warden SHIELDS, et al., Defendants.**

**No. CIV.A. 00–3754.**

United States District Court,
E.D. Pennsylvania.

Jan. 15, 2002.

---

Aaron Wicks, Mays Landing, NJ, pro se.

Denise S. Wolf, Assistant City Solicitor, City of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is a prisoner civil rights case brought by Plaintiff Aaron Wicks ("Plaintiff") against multiple Defendants, including Deborah Sharpe ("Sharpe"), Sergeant Hutson ("Hutson"), Lieutenant Holt ("Holt"), Lieutenant Waterford ("Waterford"), Captain Mercer ("Mercer"), Major Bamberski ("Bamberski"), and Warden Shields ("Shields") (collectively referred to as "Defendants"),[1] who are all employees of or affiliated with the State Correctional Institution in Somerset, Pennsylvania ("S.C.I. Somerset") where Plaintiff was incarcerated when the complained of conduct occurred. Presently before the Court is the Motion of all the remaining defendants for Summary Judgment pursuant to Fed. R.Civ.P. 56. For the reasons that follow, we will grant the Defendants' Motion.

## BACKGROUND

The facts of this case stem from alleged mistreatment suffered by Plaintiff at the hands of various Defendants who are all employees of or affiliated with S.C.I. Somerset.[2] During Plaintiff's incarceration at S.C.I. Somerset, he was employed in the legal clinic. Throughout Plaintiff's employment at the legal clinic, he misused his position to send a large volume of mail to the Philadelphia Public Defender's Association ("Defender's Association") and/or to

---

1. The Court granted the motion to dismiss of another defendant, Sergeant Harris, in January of 2001.

2. The facts are taken from the amended complaint, Plaintiff's deposition testimony, and the affidavits submitted by Defendants.

the Probation Office on behalf of other inmates and signed the letters indicating that he was the representative of the various other inmates. Plaintiff's practice was against the House of Corrections ("HOC") policies. The mail sent by Plaintiff was so voluminous that the Defender's Association called the institution and asked that the letter writing cease. Plaintiff received several verbal warnings informing him that if he did not stop misusing his position at the legal clinic in violation of HOC policies, he would be fired. Plaintiff admits that he continued this practice despite the warnings. Finally, Plaintiff was fired from his position at the legal clinic.

After Plaintiff's termination, he was only allowed access to the legal clinic and law library on the days that his housing unit was assigned to visit. Further, he could only send mail regarding any inmate, free of charge, to Jules Epstein, the Prison Master, and the Pennsylvania Prison Society.

Plaintiff also alleges that he was often not allowed to finish meals at the dining hall, referred to as the "chow hall," and that snide remarks were made to him while eating there. Plaintiff's specific allegations with respect to each Defendant are summarized below:

### A. Deborah Sharpe

Plaintiff alleges that Sharpe, who is a social worker at the HOC and who was in charge of the legal clinic, threatened Plaintiff on three separate occasions while he was an employee of the legal clinic. Plaintiff alleges that on two separate occasions Sharpe told Plaintiff that if he did not make copies of unspecified documents for her she was going to fire him. Plaintiff also alleges that Sharpe told Plaintiff that if he did not stop his letter writing campaign on behalf of other prisoners, which

was in violation of the HOC policies, she would fire him.

### B. Sergeant Hutson

Plaintiff alleges that Hutson made snide remarks to him in the chow hall and that she would make Plaintiff leave the chow hall before he had finished his meals. Plaintiff further alleges that Hutson would not allow Plaintiff access to the legal clinic during the 3 p.m. to 11 p.m. shift.

### C. Lieutenant Holt and Lieutenant Waterford

Plaintiff alleges that Holt and Waterford would not allow him access to the legal clinic during the 3 p.m. to 11 p.m. shift, threatened him not to report prisoner physical abuse, and placed him on house arrest.

### D. Captain Mercer

Plaintiff alleges that Mercer told him to stop sending letters on behalf of other prisoners through the legal clinic mail and told Plaintiff that he would only send mail free of charge from Plaintiff to Jules Epstein, the Prison Master, and to the Pennsylvania Prison Society.

### E. Major Bamberski

Plaintiff alleges that Bamberski refused to respond to the grievances filed by Plaintiff, sanctioned the firing of Plaintiff from his job at the legal clinic, and ordered that Plaintiff only be allowed in the prison legal clinic on the days that his housing unit was scheduled to visit.

### F. Warden Shields .

Plaintiff alleges that Shields knew of the "wrongful firing," restricted access to the legal clinic, and the unanswered grievances, but did nothing about them.

## DISCUSSION

### I. *Legal Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (internal citations omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### II. *Retaliation Claim*

Plaintiff argues that each Defendant violated his constitutional rights in retaliation for Plaintiff's prior complaints about the excessive force and physical abuse of prisoners. Thus, although not stated as such, Plaintiff is attempting to press a 42 U.S.C. § 1983 retaliation claim.

■ To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that the Government responded in retaliation; and (3) that the protected activity was the cause of the Government's retaliation. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997); *McGrath v. Johnson*, 67 F.Supp.2d 499, 512 (E.D.Pa.1999). In evaluating the causation element, courts employ a burden shifting framework. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001). Under this framework, the plaintiff bears the initial burden of "proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If a plaintiff meets this burden, the burden shifts to the defendant to "prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." *Id.*

■ Plaintiff argues that each action outlined above was taken in retaliation for his reporting physical abuse of other inmates. However, Defendants argue that Plaintiff has not presented sufficient evidence to meet the causation burden.[3] We agree. Below is a discussion of the alleged retaliatory acts.

---

**3.** Defendants also argue that Plaintiff has not met the first and second elements of a retaliation claim. However, Defendants did not brief those elements and instead focused solely on the causation element. As the Motion can be decided on those grounds as well, the Court will only discuss the causation element.

## A. *Termination from Legal Clinic Position*

Plaintiff alleges that he was terminated from his position at the legal clinic in retaliation for his prior reports of excessive force and physical abuse. However, the uncontradicted facts demonstrate that Plaintiff was fired from his job because, despite repeated warnings, he misused his position in violation of HOC policies. *See* Aff. of Joseph Bamberski at ¶¶ 5 and 6; Aff. of Deborah Sharpe at ¶¶ 3–6.

Plaintiff has not presented any evidence to suggest that he was terminated for any other reason. In fact, Plaintiff admits in deposition testimony that he was warned that his continued misuse of his legal clinic position would lead to his termination and that he chose to continue to violate the HOC policy despite this warning. *See* Wicks Dep. Tr. at pp. 37–43. Plaintiff has not presented any evidence to demonstrate that he was fired in retaliation for reporting excessive force and physical abuse of prisoners.

## B. *Removal From the "Chow Hall"*

Plaintiff also claims that he was ordered to leave the chow hall before finishing his meals in retaliation for his reports of prisoner abuse. However, the facts demonstrate that the chow hall policies were applied equally to all prisoners. In order for all of the prisoners to be able to eat their evening meal, the institution employed a rotation schedule where, after a certain period of time, prisoners were asked to leave the chow hall row by row in order for the next group of prisoners to enter. *See* Aff. of Gertrude Hutson at ¶¶ 2–3 (describing the evening meal time schedule); *see also* Wicks Dep. Tr. at pp. 59–64 (same). In fact, Plaintiff admits in his deposition testimony that this policy was not directed solely to him, but rather that all of the prisoners were asked to leave the chow hall after a certain amount of time. *See* Wicks Dep. Tr. at pp. 59–64. There are absolutely no facts to suggest that retaliation was the reason Plaintiff was not allowed to finish his meals.

## C. *Not Allowing Plaintiff in Legal Clinic from 3:00 p.m to 11:00 p.m Shift*

Plaintiff alleges that following his termination from the legal clinic and in retaliation for his reports of abuse, he was not allowed in the legal clinic during the 3:00 p.m. to 11:00 p.m. shift. However, the facts, including Plaintiff's admissions, demonstrate that after his termination Plaintiff was allowed access to the legal clinic on the days that his block was assigned time to use the clinic. *See* Bamberski Aff. at ¶ 7; Wicks Dep. Tr. at pp. 51–53. Plaintiff further admitted that he was never prevented from signing up for a time slot to visit the legal clinic on his block's designated day. *See* Wicks Dep. Tr. at p. 53. Thus, Plaintiff cannot claim that he was denied access to the legal clinic. *See generally Carter v. Dragovich,* No. CIV.A. 96–6496, 1999 WL 549030, *1 (E.D.Pa. July 27, 1999) (inmate has no independent right to law libraries and legal assistance programs).

## D. *Restricted Mail*

Plaintiff complains that he was only allowed to send mail on behalf of other inmates to Jules Epstein, the Prison Master, and the Pennsylvania Prison Society for retaliatory purposes. The facts demonstrate that Plaintiff was only allowed to send mail on behalf of other prisoners *free of charge* to these two sources. *See* Wicks Dep. Tr. at pp. 30–41. However, Plaintiff admits that, if he paid for the postage himself, he could send mail on behalf of himself or any other inmates to any entity. *Id.* There are no facts to demonstrate

that any restrictions placed on Plaintiff's "free postage" mail were undertaken for any retaliatory purpose.

### E. *Verbal Harassment and Failure to Respond to Grievances*

Plaintiff further complains that he experienced verbal abuse and harassment and that the grievances he filed were not responded to in retaliation for his reports of prisoner abuse. As with Plaintiff's other complaints, he has not produced any evidence to suggest that retaliation motivated this alleged verbal harassment or the alleged failure to respond to his grievances.[4] Thus, summary judgment will be granted for these claims as well. *See generally Rivera v. Chesney*, No. CIV.A. 97–7547, 1998 WL 639255, at *4–*5 (E.D.Pa. Sept. 17, 1998) (finding that "[v]erbal harassment or threats by a prison officer to an inmate, without a reinforcing act, will not state a § 1983 claim" and prisoners are "not entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights") (internal citations omitted); *Allah v. Stachelek*, No. CIV.A. 95–7593, 1998 WL 281930, at *14 (E.D.Pa. May 29, 1998); *Wilson v. Horn*, 971 F.Supp. 943, 947–48 (E.D.Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

### CONCLUSION

Plaintiff has not presented any facts to support his allegations that retaliatory actions were taken against him in response to his reports of prisoner abuse. Therefore, the Court will grant the Defendants' Motion for Summary Judgment.

---

4. Further, Plaintiff has not produced any evidence to suggest that he experienced any verbal harassment or that he filed any grievances which were not responded to.