Jeffrey PAYTON,

v.

Martin F. HORN, et al.

No. CIV. A. 97–5391.

United States District Court,
E.D. Pennsylvania.

May 17, 1999.

Douglas B. Fox, Cozen E. O'Connor, Philadelphia, PA, for Plaintiff.

Kristen Kirk, Office of Attorney General, Philadelphia, PA, for Defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff Jeffrey Payton is currently an inmate at the State Correctional Institution at Greene ("S.C.I.Greene"). He brings suit under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth and Fourteenth Amendments. His amended complaint claims that: (1) he was subject to a series of false misconduct reports in connection with a disturbance at S.C.I. Coal Township, and was denied due process at his misconduct hearings; (2) he has been subjected to cruel and unusual punishment; and (3) amounts have been withheld or withdrawn improperly from his prison account. He seeks damages and injunctive relief. Named as defendants are Martin Horn, Commissioner of the Pennsylvania Department of Corrections; Phillip Johnson, the former Superintendent at S.C.I. Greene; Donald Jones, J. Welby, L. Libhart, and Joanna Johnson, who were all hearing officers at S.C.I. Coal Township; and R. Smith, R. Romiz, C.O. Metzinger, Sgt. Jordan, John Does 1 and 2, and Lt. Strausser, who were all correctional officers and/or employees at S.C.I. Coal Township. Before me are Plaintiff's Motion for a Preliminary Injunction and two motions to dismiss, one filed individually by defendant Horn, the other filed jointly by defendants Phillip Johnson, Jordan, Metzinger, Smith, Strausser, and Romiz. For the reasons expressed below, I will deny Plaintiff's motion and dismiss this case in its entirety.

### PROCEDURAL BACKGROUND

Payton initiated this suit *pro se* by filing a proposed complaint and an application to proceed *in forma pauperis*. In that complaint, he alleged that he was subject to false misconduct reports in connection with a disturbance at S.C.I. Coal Township, and that the defendants[1] denied him due process at the hearings on those misconducts by denying him a meaningful opportunity to be heard or to present witnesses on his own behalf. The complaint also alleged that Payton was wrongly sentenced to disciplinary custody following those hearings.

---

1. Only four of the current defendants, Horn, Jones, Welby, and Libhart, were named in Plaintiff's initial complaint. Eight other individuals named in that initial complaint were dropped from the case, and nine new defendants were added when Plaintiff filed his amended complaint.

Based on those facts, he claimed violations of his rights to equal protection and due process of law under the Fourteenth Amendment. In my Order, dated September 22, 1997, which granted Payton leave to proceed *in forma pauperis,* I dismissed his Fourteenth Amendment claims as frivolous based on *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) stating, "plaintiff's claim that he was denied due process, wrongly convicted of misconduct, and sentenced to disciplinary confinement fails to state a violation of his constitutional rights." I allowed the balance of Payton's complaint to proceed. The claims allowed to go forward included: (1) denial of access to the courts; (2) unreasonable search and seizure; and (3) cruel and unusual punishment.

Upon Payton's subsequent request, I appointed counsel and granted him leave to file an amended complaint. In his amended complaint, he abandons his First Amendment and Fourth Amendment claims. Instead, Payton restates his earlier contention, which I dismissed as frivolous, that he was denied due process at his misconduct hearings, and that, as a result of those misconducts, he has been held in a combination of disciplinary and administrative custody since August, 1995. He claims that confinement in restricted housing for such an extended period constitutes cruel and unusual punishment, and restates a claim that money has been improperly withheld and/or withdrawn from his prison account.

## FACTS

For the purposes of ruling on the motions to dismiss, I take the facts presented in the amended complaint as true. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). In August, 1995, when the events at issue in this case began, Payton was an inmate at S.C.I. Coal Township. He had previously pled guilty to receiving stolen property and possession of a con-

trolled substance with intent to deliver, and was serving a sentence of two years and nine months to five and one half years. His minimum sentence expired on or about March 16, 1997 and his maximum sentence will expire on or about September 9, 1999. To date, Payton has been denied parole. Amended Compl. ¶ 7.

On August 14, 1995, a disturbance between inmates and staff broke out in the dining hall at S.C.I. Coal Township. *Id.* ¶ 9. Following the disturbance, Payton received four separate misconduct reports [2] arising from the disturbance and his alleged participation in it. *Id.* ¶ 10. A hearing on the first misconduct report was held on August 21, 1995, before defendant Welby. Payton was denied the opportunity to present witnesses. He pled not guilty to the charge of participating in the riot, but Welby maliciously marked on the hearing sheet that Payton had pled guilty to the charge. Payton was ordered to spend ninety days in disciplinary custody in the Restricted Housing Unit ("RHU") as a result of this misconduct. *Id.* ¶ 11. A hearing on the second misconduct report was held on September 6, 1995, before defendant Jones. Again, Payton was denied the opportunity to present witnesses on his behalf. Defendants Romiz and Metzinger were witnesses for the Commonwealth. Payton was found guilty of this misconduct, and was sentenced to another ninety days in disciplinary custody. *Id.* ¶ 12. A hearing on the third misconduct report was held on September 28, 1995, before defendant Libhart. Payton was denied the opportunity to present witnesses, and defendants Jordan and John Does 1 and 2 were witnesses for the Commonwealth. Payton was again found guilty and sentenced to ninety days in disciplinary custody. He was also ordered to pay a percentage of medical costs for the treatment of a correctional officer injured during the disturbance. *Id.* ¶ 13. A

---

**2.** It is not clear from the complaint whether the four misconduct reports were issued si-

multaneously or seriatim.

hearing on the final misconduct report was held on October 10, 1995, before defendant Joanna Johnson. Defendants Romiz and Strausser were witnesses. Following this hearing, Payton was sentenced to sixty days in disciplinary custody. *Id.* ¶ 14. Payton had been placed in the RHU immediately following the disturbance, and spent a total of 330 days in disciplinary custody as a result of disturbance-related charges. *Id.* ¶ 14. He denies having participated in the disturbance. *Id.* ¶ 15.

When Payton completed his term in disciplinary custody, he was placed in administrative custody. He was kept in the RHU, with largely the same restrictions on his liberty as exist in disciplinary custody, rather than being returned to the general prison population. *Id.* ¶ 20. To date, he has never been returned to the general prison population; he has remained in the RHU, in either disciplinary or administrative custody,[3] since August 14, 1995. Amended Compl. ¶ 21.

Defendant Horn has moved to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(3) and (6). He makes three arguments: (1) Plaintiff has not alleged Horn's personal involvement in connection with the misconduct hearings, thereby precluding monetary relief against him under 42 U.S.C. § 1983; (2) the case should be dismissed for improper venue; and (3) the applicable two-year statute of limitations bars Plaintiff's cause of action. The motion to dismiss filed by defendant Johnson and the five other individual defendants incorporated by reference Horn's motion to dismiss. It also incorporated by reference defendant Horn's Response in Opposition to Plaintiff's Motion for Injunctive Relief and Restraining Order, which argued that Payton was unlikely to prevail on the merits of this case because, (1) under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) and

*Griffin v. Vaughn,* 112 F.3d 703 (3d Cir. 1997), an inmate does not have a protected liberty interest in placement in the general prison population; and (2) under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), Payton has failed to exhaust administrative remedies regarding his placement in administrative custody.

## DISCUSSION

In the PLRA, Congress required that prisoners exhaust administrative remedies before bringing suit in federal court under section 1983 over prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). However, the court may dismiss a suit without first requiring exhaustion if "a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief may be granted." 42 U.S.C. § 1997e(c)(2). Because I find that Payton's allegations fail to state a claim under 42 U.S.C. § 1983, I will dismiss the complaint.

█ In order to bring a successful § 1983 claim, a plaintiff must demonstrate: (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir.1994); *Carter v. City of Philadelphia.,* 989 F.2d 117, 119 (3d Cir.1993). I will address each of Payton's claims in turn.

---

**3.** Since Payton was initially transferred into administrative custody, he has received misconduct reports unrelated to the Coal Township disturbance and has spent additional time in disciplinary custody. *See* Letter from

Payton's counsel, Douglas Fox, to Judge Anita B. Brody of 11/16/98 (docket entry 44). However, it is not clear the exact amount of time he has spent in disciplinary, as opposed to administrative custody.

## Fourteenth Amendment—Prison Account Funds

▮ Payton claims that following the September 28, 1995, misconduct hearing, funds have been improperly withdrawn or withheld from his prison account to pay for the medical expenses of an officer injured in the Coal Township disturbance. He claims that the procedures followed in that misconduct hearing were deficient, and consequently, such withholding or withdrawals have violated his right to due process. Even assuming the facts as alleged are true, the "unauthorized, intentional deprivation of property by a state employee does not constitute a denial of the procedural requirements of the Due Process Clause if a meaningful postdeprivation remedy is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. *See* 42 Pa. Cons.Stat. Ann. § 8522(b); *Acosta v. McGrady*, 1999 WL 158471, at *6 (E.D.Pa.1999); *Smith v. Luciani*, 1998 WL 151803, at *5 (E.D.Pa.1998); *Austin v. Lehman*, 893 F.Supp. 448, 454 (E.D.Pa. 1995); *Gilmore v. Jeffes*, 675 F.Supp. 219, 221 (M.D.Pa.1987). Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.

## Fourteenth Amendment—Placement in Disciplinary/Administrative Custody

The main thrust of Payton's complaint is that he was denied due process of law at his four misconduct hearings, when he was maliciously found guilty of participating in the disturbance. The complaint alleges that the hearing officers were not neutral and impartial, and that he was prevented from presenting witnesses. As a result of these four hearings, he has been held in a combination of disciplinary and/or adminis-

trative custody since August, 1995. This claim is controlled by the Supreme Court's decision in *Sandin v. Conner* and the Third Circuit's decision in *Griffin v. Vaughn*. In *Sandin*, a Hawaii inmate alleged that he was denied due process of law when, at a disciplinary hearing, he was denied the right to present witnesses and sentenced to thirty days in disciplinary segregation. The Ninth Circuit had held that Conner had a liberty interest remaining free from disciplinary custody, and remanded the case to the district court for a determination of whether Conner received all process that was due. *Sandin*, 515 U.S. at 476, 115 S.Ct. 2293. The Supreme Court reversed, holding that the Fourteenth Amendment's due process clause is triggered only by those restraints which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. Applying that standard in Conner's case, the Court noted that the conditions faced by a prisoner in disciplinary confinement did not differ significantly from the conditions faced in either administrative segregation or protective custody. *Id.* at 486, 115 S.Ct. 2293. Given the similarity between disciplinary confinement and administrative custody, which was totally discretionary, the Court concluded that the conditions imposed upon a prisoner in disciplinary custody were not atypical or significantly different from conditions a prisoner could expect to face in the ordinary course of prison life, and thus did not implicate the Due Process Clause.[4]

In *Griffin v. Vaughn* the Third Circuit applied the *Sandin* "atypical and significant hardship" standard to the case of a Pennsylvania inmate held in administrative custody. In that case, plaintiff Griffin was a suspect in the rape of a female prison guard and was placed in administrative custody, without a hearing, for fifteen months pending an investigation. Griffin

---

4. The Court had previously held that placement in administrative segregation is not "an interest independently protected by the Due Process Clause." *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

alleged that the length of time spent in administrative segregation, absent a hearing, had violated his right to due process. In upholding the district court's grant of summary judgment in favor of defendants, the court held that confinement in administrative custody for a period of fifteen months "did not deprive [Griffin] of a liberty interest and ... he was not entitled to procedural due process protection." 112 F.3d at 708. Other circuits have reached similar conclusions in applying *Sandin*.[5]

In this case, Payton argues that the length of time he has spent in the RHU is an "atypical and significant hardship." However, under *Sandin*, there is no constitutionally protected liberty interest in placement in the general prison population. The length of time spent in the RHU, standing alone, does not state a claim under the Due Process Clause. *See Acosta*, 1999 WL 158471, at *4 (E.D.Pa. 1999). Payton has not alleged that his treatment in the RHU was in any way atypical from that of other inmates in the unit, or that he is being punished in retaliation for exercising a constitutional right. Thus, his allegation that he has been denied due process by being held in the RHU for such an extended period, without more, fails to allege the type of "atypical and significant" deprivation necessary to trigger due process protections, and cannot form the basis of a suit under section 1983.[6]

### Eighth Amendment

Payton also claims that the time he has spent in the RHU constitutes cruel and unusual punishment, in violation of his Eighth Amendment rights. To state a claim under the Eighth Amendment, an inmate must allege "that he has been deprived of 'the minimal civilized measure of life's necessities.'" *Griffin*, 112 F.3d at 709 (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir.1992)), and that a prison official acted with deliberate indifference in subjecting him to that deprivation. *Id.* Although the complaint asserts in a conclusory fashion that Payton has suffered "an extreme deprivation of basic human needs" (Amended Compl. ¶ 23), he does not allege that he has been deprived of "food, clothing, shelter, sanitation, medical care, [or] personal safety." *Griffin*, 112 F.3d at 709. He does not allege that the day-to-day conditions of his confinement are in any way different from the conditions faced by other prisoners in administrative custody, nor does not allege that the conditions depart in any way from the regulations established by the Department of Corrections for administrative custody. *See id.; see also Nieves v. Dragovich*, 1997 WL 698490, at *8 n. 10 (E.D.Pa.1997), *aff'd*, 1999 WL 132858, 175 F.3d 1011 (3rd Cir. 1999) (mem.). I conclude that Payton's allegations fail to state a claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment, and cannot be brought under section 1983.

### EXHAUSTION

Even if I were to conclude that Payton's amended complaint stated a viable claim that his constitutional rights have been violated, I would dismiss this case for failure to exhaust administrative remedies,

---

5. *See, e.g., Jones v. Baker*, 155 F.3d 810 (6th Cir.1998) (confinement in administrative segregation for two and one-half hears is not "atypical and significant" hardship); *Pichardo v. Kinker*, 73 F.3d 612 (5th Cir.1996) ("[A]bsent extraordinary circumstances, administrative segregation ... will never be a ground for a constitutional claim ...."); *cf. Wagner v. Hanks*, 128 F.3d 1173, 1175–76 (7th Cir.1997) ("[T]he right to litigate disciplinary confinements has become vanishingly small. This may be why, since *Sandin*, no court of appeals has found such a confine-

ment to be a deprivation of liberty ....") (citation omitted).

6. *See Acosta*, 1999 WL 158471, at *4 (a sentence of eighteen months in the RHU, by itself, does not implicate the Due Process Clause); *Smith v. Luciani*, 1998 WL 151803 (E.D.Pa.1998) (sentence of seven months in disciplinary custody is not an atypical, substantial deprivation which might create a liberty interest).

as required by 42 U.S.C. § 1997e(a). The amended complaint states, "Plaintiff has exhausted his administrative appeals and remedies relating to the misconduct adjudications." Amended Compl. ¶ 16. However, the crux of Payton's claim is he has been denied due process of law due to the length of time he has spent in the combination of disciplinary and administrative custody. *See* Amended Compl. ¶¶ 20–23; *see also* Transcript of Chambers Conference held on April 9, 1999 at 4–6 (docket entry 46). Nowhere has Payton alleged that he has exhausted his administrative appeals with regard to the decision to keep him in administrative custody, nor does he allege that there are no remedies available to him. He also fails to allege exhaustion on his claim that his funds have been improperly withdrawn or withheld from his prison account.

Under the PLRA, Payton's failure to allege either exhaustion or lack of remedies, standing alone,[7] warrants dismissal, albeit without prejudice to refile his claims upon exhaustion. I reach this conclusion based on the language in 42 U.S.C. § 1997e(a), which makes exhaustion mandatory and eliminates the court's ability to hold onto a case pending exhaustion,[8] and the screening function placed upon the courts by other provisions in the PLRA. *See* 42 U.S.C. § 1997e(c) (courts shall dismiss prison conditions suits *sua sponte* if the action is "frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune"); *see also* § 1997e(g) (defendants in such suits may waive the right to reply, but no relief may be granted to plaintiff unless such a reply has been filed). If it does not appear from the complaint that all administrative remedies are exhausted, the court should dismiss the case, without prejudice and without requiring a defendant to reply. The Sixth Circuit has adopted a rule requiring plaintiffs, whose suits fall under § 1997e, to "allege and show that they have exhausted all available state administrative remedies." *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998) ("A prisoner should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint."); *see also White v. Fauver*, 19 F.Supp.2d 305, 317 (D.N.J.1998) (dismissing claims without prejudice for failure to allege exhaustion).

## CONCLUSION

For the reasons expressed above, Payton's claims against all defendants are dismissed.[9]

---

7. In addition, defendant Horn has submitted an affidavit from Robert S. Bittner, Chief Hearing Officer of the Department of Corrections, in which Bittner states that he has researched the records and files and confirmed that Payton had never appealed an administrative custody decision to the Central Office Review Committee ("CORC") for final review, as provided by the Department of Corrections administrative directive, DC–ADM 802. *See* Decl. of Robert Bittner, Exhibit D–6 to Def. Horn's Resp. in Opp. to Pl.'s Mot. for Inj. Relief. Payton has failed to respond with any evidence that he has exhausted his remedies.

8. Compare the pre-PLRA version of 42 U.S.C. § 1997e(a)(1):

[I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such a case for a period not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

with the revised section 1997e(a), enacted by the PLRA:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

9. Although I am dismissing this case, I am deeply concerned about the length of time Payton has spent in the RHU, and about the fact that, because his maximum sentence will

expire shortly, he will be released into the public either directly from the RHU or with little, if any, time spent in the general prison population.