# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Palmer,                 :
           Appellant       :
                           :
         v.                  :    No. 2451 C.D. 2015
                           :    Submitted: March 24, 2016
John Doe Sergeant, CO1 Disabella,   :
Sergeant Myers, John Doe RHU     :
Officer and John Kerestes         :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: May 5, 2016**

Stephen Palmer (Palmer), representing himself, appeals an order of the Court of Common Pleas of Schuylkill County (trial court) denying his petition to proceed *in forma pauperis* (IFP) and dismissing his underlying complaint as frivolous pursuant to Pennsylvania Rule of Civil Procedure No. 240(j)(1). Upon review, we affirm in part, reverse in part and remand for further proceedings.

## I. Background

In September 2015, Palmer, an inmate incarcerated at the State Correctional Institution – Mahanoy (SCI-Mahanoy), filed a complaint against five Department of Corrections' (DOC) employees together with a petition and affidavit to proceed *in forma pauperis*. Specifically, Palmer named as defendants: John Doe Sergeant, in his official capacity as sergeant of the "J" Housing Unit at

SCI-Mahanoy; CO1 Disabiela,[1] in his official capacity as housing unit officer of the "J" Housing Unit at SCI-Mahanoy; Sergeant Myers, in his official capacity as property sergeant at SCI-Mahanoy; John Doe, in his official capacity as restricted housing unit (RHU) officer at SCI-Mahanoy; and John Kerestes, in his official capacity as superintendent of SCI-Mahanoy (collectively, Defendants). Certified Record (C.R.), Compl. at ¶¶2-11.

In his complaint, Palmer averred that he arrived at SCI-Mahanoy in 2002. In 2005, he purchased a "Hi Intensity Desk Lamp" at a cost of $14.75. Compl. at ¶15. In 2008, he purchased two three-packs of Brother Nylon Typewriter Ribbons at a cost of $45.98.

Palmer further alleged that in October 2014, he was placed in SCI-Mahanoy's RHU as a result of a conflict with a cellmate. At that time, his personal property remained in his cell, including the desk lamp and typewriter ribbons. Palmer averred: "Upon information and belief either J Block Sergeant and/or [J] Block Officer Disabiela packed [Palmer's] personal property, without the required Property Inventory, and transported it to and turned it over to either … Property Room Sergeant Myers or an unidentified RHU officer." Compl. at ¶19.

After 10 days, Palmer was released from the RHU and was assigned to "BA Unit." Compl. at ¶20. He alleged that he received his personal property

---

[1] In his complaint, Palmer refers to "CO1 Disabiela," rather than "CO1 Disabella" as reflected in the trial court's order. In its brief, the Department of Corrections (DOC) also refers to "CO1 Disabiela" rather than "CO1 Disabella." Br. for Appellees at 5. In accord with DOC's brief, we refer to "CO1 Disabiela" throughout this opinion.

without the required property inventory sheet and realized several items were missing, including the desk lamp and typewriter ribbons. Palmer averred that he notified BA Unit team members Sergeant Datilio and Officer D'Angelo and Property Sergeant Myers that his personal property was missing. He further alleged that in November 2014, he filed a grievance "in an effort to resolve his missing personal property right to final review on August 31, 2015." Compl. at ¶22.

Based on these averments, Palmer raised claims for conversion, misfeasance and nonfeasance against Sergeant Doe, CO1 Disabiela, Sergeant Myers, and RHU Officer Doe. Additionally, Palmer averred SCI-Mahanoy had a policy, practice or custom of packing an inmate's personal property without the required property inventory form. As a result, Palmer alleged, inmates' personal property, including Palmer's property, is lost, without investigation or sanction. Palmer averred this policy, practice or custom showed a deliberate indifference on the part of Superintendent Kerestes "to the constitutional rights of persons within [SCI-Mahanoy], and [was] the cause of the violations of [Palmer's] rights …." Compl. at ¶67.

About a week after Palmer filed his complaint and request to proceed IFP, the trial court issued an order dismissing Palmer's suit as frivolous under Pa. R.C.P. No. 240(j) and denying as moot his petition to proceed IFP. In a footnote the trial court indicated Palmer's suit concerned a complaint regarding missing personal property, a matter within the sole jurisdiction of the prison authorities. Palmer appealed, and the trial court directed him to file a concise statement of the

3

errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which he did. The trial court subsequently adopted its prior order dismissing Palmer's complaint as its opinion pursuant to Pa. R.A.P. 1925(a). This matter is now before us for disposition.

## II. Issues

On appeal,[2] Palmer argues the trial court improperly dismissed his suit as frivolous where he alleged cognizable claims for conversion, misfeasance and nonfeasance, and policy, practice or custom against the Defendants.

## III. Discussion

Pursuant to Rule 240(j)(1):

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed [IFP], the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

Pa. R.C.P. No. 240(j)(1). A frivolous action or proceeding has been defined as one that "lacks an arguable basis either in law or in fact." Id., *Note* (citing Neitzke v. Williams, 490 U.S. 319 (1989)).

---

[2] Our review of an order disposing of a petition for leave to proceed IFP and the underlying complaint pursuant to Pa. R.C.P. No. 240(j) is limited to determining whether the trial court violated a party's constitutional rights, abused its discretion or committed an error of law. Thomas v. Holtz, 707 A.2d 569 (Pa. Cmwlth. 1998).

4

## A. Conversion

Palmer first argues the trial court improperly dismissed as frivolous his claim for conversion. He asserts the unauthorized exercise of the right of ownership of his property after his release from the RHU and the Defendants' exclusion of his lawful ownership rights constitute conversion. Palmer contends the exhibits attached to his complaint establish his right to access and possession of the personal property at issue, the desk lamp and typewriter ribbons.

"[T]he Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. §2310. Pursuant to this authority, the General Assembly has, in limited circumstances, waived sovereign immunity

> as a bar to an action against Commonwealth parties, <u>for damages arising out of a negligent act</u> where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. C.S. §8522(a) (emphasis added). Thus, "when an employee of a Commonwealth agency [is] acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." <u>La Frankie v. Miklich</u>, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

Applying these principles here, the Defendants are immune from Palmer's conversion claim. Our Supreme Court defined conversion as "an act of

5

willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Norriton East Realty Corp. v. Central-Penn Nat'l Bank, 254 A.2d 637, 638 (Pa. 1969). The Supreme Court also cited with approval Prosser's description of the ways in which conversion can be committed:

> (a) Acquiring possession of the goods, <u>with an intent to assert a right to them which is in fact adverse to that of the owner</u>.
>
> (b) Transferring the goods in a manner which deprives the owner of control.
>
> (c) Unreasonably withholding possession from one who has the right to it.
>
> (d) Seriously damaging or misusing the chattel in defiance of the owner's rights.

Id. (quoting William L. Prosser, LAW OF TORTS §15 (2d ed. 1955)) (emphasis added). In short, a claim for conversion arises from an intentional act. Thus, Palmer's claim for conversion is barred by sovereign immunity. See, e.g., Stokes v. COI Gehr (Pa. Cmwlth., No. 332 C.D. 2011, filed October 19, 2011), 2011 WL 10841248 (unreported) (inmate's conversion claim against DOC employees and officers was barred by sovereign immunity).[3]

## B. Misfeasance/Nonfeasance

Palmer next maintains the trial court improperly dismissed his complaint as frivolous where he alleged valid claims for misfeasance and

---

[3] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

6

nonfeasance.  Palmer asserts the Defendants' actions and inactions gave rise to state law claims of misfeasance.  He further contends the Defendants' "actions/inactions were acting within the scope of their employment at the time [Palmer's] property was withheld since their employment required a property inventory sheet to be utilized which was omitted rendering their action/inactions outside the scope of their employment."  Br. for Appellant 10.  Because he alleged the Defendants were not acting within the scope of their employment at the time of his loss, Palmer maintains this Court should reverse the trial court's order finding his claim frivolous.

Misfeasance is defined as: "A lawful act performed in a wrongful manner."  BLACK'S LAW DICTIONARY 1021 (8th ed. 2004).  Nonfeasance is: "The failure to act when a duty to act exists."  Id. at 1080.  As further explained in Black's Law Dictionary: "[T]here arose very early a difference, still deeply rooted in the law of negligence, between 'misfeasance' and 'nonfeasance' — that is to say, between active misconduct working positive injury to others and passive inaction or a failure to take steps to protect them from harm."  Id. (quoting W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS §56 at 374 (5th ed. 1984)).

To the extent Palmer attempts to plead claims for an intentional tort, as noted above, these claims are barred by sovereign immunity.[4]  However,

---

[4] If a defendant who is a Commonwealth employee was not acting within the scope of employment, he cannot claim the affirmative defense of sovereign immunity.  Schell v. Guth, 88 A.3d 1053 (Pa. Cmwlth. 2014).  In Schell, this Court reiterated the following applicable criteria to resolve "scope-of-employment issues":

**(Footnote continued on next page…)**

Palmer's claims on this point also sound in negligence. In <u>Williams v. Stickman</u>, 917 A.2d 915 (Pa. Cmwlth. 2007), this Court held that where an inmate alleges negligence resulting in damage to property in the care, custody or control of prison employees, sovereign immunity will not bar the action. We stated:

> Section 8522(b)(3) of the … Sovereign Immunity Act states that 'the defense of sovereign immunity shall not be raised to claims for damages caused by … [t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including ... property of persons held by a Commonwealth agency….' 42 Pa. C.S. § 8522(b)(3). [The inmate] sets forth a claim for damages to his television set caused by the care of the television set while it was in the possession of Commonwealth parties. Based on the plain language of section 8522(b)(3), the state employees may not raise sovereign immunity as a defense in this case. <u>See</u> <u>Payton v. Horn</u>, 49 F.Supp.2d 791 (E.D. Pa. 1999) [<u>overruled on other grounds</u>, <u>Ray v. Kertes</u>, 285 F.3d 287 (3d Cir. 2002)] (holding that section 8522(b) provides a remedy for inmates when a prison official negligently handles an inmate's personal property).

<u>Id.</u> at 918. Thus, we held that an inmate can file a negligence claim against DOC employees for the negligent damage to or loss of an inmate's personal property that

---

**(continued…)**

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; [and,] it is actuated at least in part, by a purpose to serve the employer ….

<u>Id.</u> at 1067 (citation omitted). Despite a passing assertion in his brief, our review of Palmer's claims for misfeasance as stated in his complaint here reveals that Palmer did not clearly aver that the Defendants acted outside the scope of their employment.

8

was placed in DOC's care, custody, and control and the claim will not be barred by sovereign immunity.

In addition, in order to maintain an action for negligence, a plaintiff must prove: (1) the defendant had a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and, (4) actual damages. Page v. City of Phila., 25 A.3d 471, 475 (Pa. Cmwlth. 2011). To that end, in reviewing an inmate's complaint in Pelzer v. PRY (Pa. Cmwlth., No. 50 C.D. 2012, filed May 15, 2013), 2013 WL 3970388 (unreported), this Court stated:

> In his [a]ction [the inmate] describes the [d]efendants' duties in their roles as property officers or security officers, which include transporting, receiving, inventorying, and searching inmate property at SCI-Houtzdale. It is reasonable to infer that [the] [d]efendants are to perform these duties in a non-negligent manner. [The inmate] alleges that [the] [d]efendants negligently performed their work duties, thereby causing the loss or destruction of his property. We are satisfied that [the inmate's] allegations have sufficiently set forth the necessary elements for a negligence claim ….

Pelzer, slip op. at 11 (citations omitted).

Here, Palmer alleged that on October 7, 2014, he was placed in the RHU. At that time, his personal property remained in his cell, including his desk lamp and typewriter ribbons. He averred: "Upon information and belief either J Block Sergeant [or] JA Block Officer Disabiela packed [Palmer's] personal property, without the required Property Inventory, and transported it to and turned it over to either … Property Room Sergeant Myers or an unidentified RHU

9

officer." Compl. at ¶19. Palmer further alleged that, after his release from the RHU, he received his personal property without the required property inventory sheet. He realized several items were missing, including the desk lamp and typewriter ribbons, and he notified BA Unit team Sergeant Datilio, Officer D'Angelo and Property Sergeant Myers. Palmer also alleged Sergeant Doe, CO1 Disabiela, Sergeant Myers and Officer Doe had a duty to process his personal property with another employee and both sign the property inventory sheet, and that his personal property was lost as a result of the Defendants' nonfeasance.

As alluded to in Palmer's complaint, his personal property became the Defendants' responsibility upon his involuntary transfer to the RHU. See Samuels v. Walsh (Pa. Cmwlth., No. 318 C.D. 2014, filed November 17, 2014), 2014 WL 10298879 (unreported). Palmer sufficiently alleged his personal property was in the prison officials' care, custody or control. Id. Thus, he is not precluded from pursing his claim for negligence against Sergeant Doe, CO1 Disabiela, Sergeant Myers and Officer Doe for the loss of his property. Williams; Samuels.

Further, the averments in Palmer's complaint include facts to support his allegations that the Defendants had a duty to secure and protect Palmer's property. The averments further contain facts that support Palmer's allegations that the prison officials breached that duty and, as a result, Palmer's property was

10

lost.  Samuels.  Under these circumstances, we cannot say Palmer's negligence claim is frivolous so as to warrant dismissal under Pa. R.A.P. 240(j)(1).[5]

### C. 42 U.S.C. §1983

As a final issue, Palmer argues the trial court improperly dismissed his suit as frivolous where he alleged a valid claim for developed and maintained policies, practices or customs that exhibited deliberate indifference to his constitutional right to possess personal property.  Palmer asserts the policy of not using a property inventory sheet when exercising control over property is the moving force behind this alleged constitutional violation.  He contends the prison officials' actions and inactions resulting in the deprivation complained of arose out of official policy.  Because this case involves official policy as the moving force behind a constitutional violation, Palmer maintains, this Court should reverse the trial court's order finding this claim frivolous.

Although not entirely clear, it appears Palmer's claim on this point purports to seek relief based on 42 U.S.C. §1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by

---

[5] While not addressed by the parties, we note that Palmer cannot state a claim under a common law bailment analysis.  In particular, this Court previously determined that the confiscation and withholding of an inmate's property pursuant to the inmate's involuntary assignment to the RHU falls within DOC's authority to exercise discipline, does not show mutual assent of the parties, and, thus, is not a bailment.  See Samuels v. Walsh (Pa. Cmwlth., No. 318 C.D. 2014, filed November 17, 2014), 2014 WL 10298879 (unreported) (citing Dep't of Corr. v. Bd. of Claims, 580 A.2d 923 (Pa. Cmwlth. 1990)).

11

the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. …

42 U.S.C. §1983. Section 1983 provides a civil remedy for deprivations of federally protected rights caused by persons acting under color of state law. Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

To hold an individual liable on a Section 1983 claim, a plaintiff must allege and prove a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of law. Pettit v. Namie, 931 A.2d 790 (Pa. Cmwlth. 2007). There are two essential elements necessary to establish a claim under Section1983: the conduct complained of was committed by a person acting under color of state law; and, the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Id.

Here, in neither his complaint nor his brief to this Court does Palmer identify *what* federal right the Defendants purportedly violated.[6] In any event, "[a]

---

[6] Palmer stated his alleged "policy, practice and/or custom" only against Superintendent Kerestes. Compl. at ¶¶63-68. Specifically, Palmer alleged Superintendent Kerestes is the policymaker at SCI-Mahanoy. He further averred that prior to the events at issue it was the policy, practice and custom of SCI-Mahanoy to pack a prisoner's personal property without the required property inventory form. As a result, Palmer alleged, his personal property was lost. He further averred the policy, practice and custom demonstrated a deliberate indifference on the part of Superintendent Kerestes to the constitutional rights of those incarcerated at SCI-Mahanoy and were the cause of the violation of Palmer's rights.

It is a well-established principle under Section 1983, that a plaintiff must show that each and every defendant was "personal[ly] involve[d]" in depriving him of his rights. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir .2005). There is no liability for a supervising defendant based

**(Footnote continued on next page…)**

claim that state officials have deprived a prisoner of personal property does not state a recognizable § 1983 action." Atwell v. Lavan, 557 F. Supp. 2d 532, 555 (M.D. Pa. 2008), aff'd, 366 F. App'x 393 (3d Cir. 2010) (citation omitted). To that end, a Section 1983 action cannot be brought to vindicate a prisoner's right to property where the deprivation occurs as a result of a tortious act of a state employee and where an adequate remedy exists to compensate those who suffered tortious loss at the hands of the state. Parratt. The U.S. Supreme Court later extended this holding to intentional deprivations of property, similarly holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a Section 1983 action is not available. Hudson v. Palmer, 468 U.S. 517 (1984).

Here, as alleged in his complaint, Palmer availed himself of DOC's grievance procedure "to final review[.]" Compl. at ¶22. Moreover, as set forth above, Palmer may pursue a negligence claim against Defendants. Because Palmer

---

**(continued…)**

on the theories of *respondeat superior* or vicarious liability. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976). Rather, in order to establish liability, a plaintiff has to allege and prove there was a relevant policy or custom, and the policy *caused the constitutional violation he alleges*. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003) (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S. 397 (1997)). Thus, individual defendants who are policy makers may be liable under Section 1983 if it is alleged and proven that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).
    Here, however, as set forth above, Palmer does not specifically allege *what* constitutional right was purportedly violated. And, as stated above, a claim that state officials deprived a prisoner of personal property does not state a cognizable Section 1983 action. Atwell v. Lavan, 557 F. Supp. 2d 532 (M.D. Pa. 2008), aff'd, 366 F. App'x 393 (3d Cir. 2010).

13

possesses adequate remedies in the form of DOC's grievance procedure[7] and a possible negligence claim, a Section 1983 is not available. Parratt; Hudson; see Wheeler v. Delbalso (Pa. Cmwlth., No. 639 C.D. 2015, filed November 3, 2015), 2015 WL 6829233 (unreported) (affirming dismissal of prisoner's Section 1983 claim regarding deprivation of prisoner's personal property because adequate state law remedies were available).[8]

## IV. Conclusion

Based on the foregoing, the trial court's order is affirmed as to Palmer's intentional tort claim and his apparent claim under 42 U.S.C. §1983, and

---

[7] This Court holds that DOC's internal grievance procedure provides constitutionally adequate and meaningful legal remedies to inmates. See, e.g., Silo v. Ridge, 728 A.2d 394 (Pa. Cmwlth. 1999); Waters v. Dep't of Corr., 509 A.2d 430 (Pa. Cmwlth. 1986).

[8] In Bronson v. Central Office Review Committee, 721 A.2d 357 (Pa. 1998), our Supreme Court, addressing the confiscation of inmate civilian clothing, held this Court lacks appellate jurisdiction over inmate appeals of decisions by intra-prison disciplinary tribunals, such as grievance and misconduct appeals. The Court said:

> [I]nternal prison operations are more properly left to the legislative and executive branches, and ... prison officials must be allowed to exercise their judgment in the execution of policies necessary to preserve order and maintain security free from judicial interference. [See Robson v. Biester, 420 A.2d 9, 12 (Pa. Cmwlth. 1980) (citing Bell v. Wolfish, 441 U.S. 520, (1979))]. We agree. Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the 'full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding ....' [Robson, 420 A.2d at 12 (citing Wolff v. McDonnell, 418 U.S. 539 (1974))].

Id. at 358-59 (emphasis added).

is reversed with regard to Palmer's negligence claim against Sergeant Doe, CO1 Disabiela, Sergeant Myers and Officer Doe, and remanded for further proceedings.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Palmer,             :
          Appellant      :
                   :
        v.                :    No. 2451 C.D. 2015
                   :
John Doe Sergeant, CO1 Disabella,    :
Sergeant Myers, John Doe RHU       :
Officer and John Kerestes          :

## O R D E R

**AND NOW**, this 5th day of May, 2016, the order of the Court of Common Pleas of Schuylkill County is **AFFIRMED** in part and **REVERSED** in part, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

 

                          _____
                          ROBERT SIMPSON, Judge